UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TREVOR SHOUSE, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>TEMPUS AI, INC., ERIC LEFKOFSKY, and JIM ROGERS,<br><br>        Defendants. | Civil Action No.  1:25-cv-06534<br><br><br>CLASS ACTION<br><br><br>Hon. Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MAN HE AND MICHAEL WHITE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT ............................................................................................................................. 5

I.       HE AND WHITE SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ...................... 5

         A.       He and White Are Willing to Serve as Class Representatives................................ 6

         B.       He and White Have the "Largest Financial Interest" in the Action....................... 6

         C.       He and White Otherwise Satisfy the Requirements of Rule 23............................. 7

         D.       He and White Will Fairly and Adequately Represent the Interests of the Class and
                  Are Not Subject to Unique Defenses ..................................................................... 11

II.      CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED... 12

CONCLUSION.......................................................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arreola v. Godinez*,
  546 F.3d 788 (7th Cir. 2008) ..................................................................................................8

*Barnet v. Elan Corp., PLC*,
  236 F.R.D. 158 (S.D.N.Y. 2005) ...........................................................................................10

*Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*,
  No. 12 C 3297, 2012 WL 5471110 (N.D. Ill. Nov. 9, 2012).......................................8, 10, 11

*Chandler v. Ulta Beauty, Inc.*,
  No. 18-cv-1577, 2018 WL 3141763 (N.D. Ill. June 26, 2018)............................................8, 9

*City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*,
  No. 11 C 8332, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012)...................................................9

*Gumm v. Molinaroli*,
  No. 16-CV-1093-PP, 2016 WL 6680462 (E.D. Wis. Nov. 14, 2016) ......................................8

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).................10, 11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d. Cir. 2001)..................................................................................................10

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) ...............................................................................................12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ...............................................................................................8

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ...............................................................................................8

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ...........................................................................................12

*Lax v. First Merchants Acceptance Corp.*,
  Nos. 97 C 2715 *et al.*, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .......................................6, 7

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) .............................................11

*Maiden v. Merge Techs., Inc.*,
No. 06-C-349, 2006 WL 3404777 (E.D. Wis. Nov. 21, 2006)............................................7, 12

*Munch v. Sprout Soc., Inc.*,
No. 24-CV-3867, 2024 WL 4753734 (N.D. Ill. Nov. 12, 2024) ...............................................7

*Sokolow v. LJM Funds Mgmt., Ltd.*,
No. 18-CV-01039, 2018 WL 3141814 (N.D. Ill. June 26, 2018)......................................10, 11

*Takara Trust v. Molex Inc.*,
229 F.R.D. 577 (N.D. Ill. 2005)................................................................................................9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008).....................................................................................12

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ........................................11

*Weltz v. Lee*,
199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................................10

## Statutes

17 C.F.R. § 240.10b-5...............................................................................................................1

15 U.S.C. § 78j(b) .....................................................................................................................1

15 U.S.C. § 78u-4 ...............................................................................................1, 5, 6, 7, 9, 12

Private Securities Litigation Reform Act of 1995 ................................................5, 6, 7, 10, 11, 12

## Rules

Fed. R. Civ. P. 23.......................................................................................................1, 2, 5, 7, 8, 9

iii

Man He ("He") and Michael White ("White") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) appointing He and White as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all persons and entities that purchased Tempus AI, Inc. ("Tempus" or the "Company") common stock between August 6, 2024 and May 27, 2025, inclusive (the "Class Period"); and (2) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The complaint ("Complaint") (Dkt. No. 1) in the above-captioned action (the "Action") alleges a significant fraud perpetrated on investors in Tempus during the Class Period. Specifically, it is alleged that, during the Class Period, the above-captioned defendants ("Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), by misrepresenting Tempus's business and prospects, specifically regarding, *inter alia*, the value, credibility, and sustainability of various of the Company's business arrangements, as well as the health of its core operations and revenue prospects. *See* Dkt. No. 1 ¶¶ 2-9. Tempus investors, including He and White, incurred significant losses following the disclosures of the alleged fraud, which caused Tempus's stock price to fall sharply, damaging He, White, and other Tempus investors. *See, e.g.*, *id.* ¶¶ 7-9.

Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-

1

4(a)(3)(B)(iii)(I). He and White, with collective losses of approximately $55,056 in connection with their Class Period purchases of Tempus common stock, believe that they have the largest financial interest in the relief sought in this Action. *See* Declaration of J. Alexander Hood II in Support of Motion ("Hood Decl."), Exhibit ("Ex.") A. Beyond their considerable financial interest, He and White also meet the applicable requirements of Rule 23 because their claims are typical of those of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their responsibilities as Co-Lead Plaintiffs and vigorously prosecute this Action on behalf of the Class, He and White have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, based on their significant financial interest and commitment to overseeing this litigation, He and White respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

<strong>STATEMENT OF FACTS</strong>

As alleged in the Complaint in the Action, based in Chicago, Illinois, Tempus purports to provide Artificial Intelligence ("AI") enabled precision medicine solutions. Dkt. No. 1 ¶ 2. The Company claims it develops intelligent diagnostics through the practical application of AI in healthcare to make laboratory tests and connects laboratory results to a patient's own clinical data. *Id.*

2

Throughout the Class Period, Tempus branded itself as an AI company despite having little history of generating significant revenues from AI solutions. *Id.* ¶ 3. Instead, the Company generated most of its revenues from acquisitions, genomic testing and data licensing agreements. *Id.*

During this time, Defendants repeatedly claimed that the contract value and quality of its data licensing agreements with life science companies were secure and expanding. *Id.* ¶ 4. The Company often reported on its relationship with long-term customer AstraZeneca as an example. *Id.* Importantly, during the Class Period, Tempus announced an expanding contract with AstraZeneca via a joint venture between the Company, AstraZeneca and Pathos AI. *Id.*

The Company similarly announced a joint venture with SoftBank as a way to generate revenue growth by entering the Japanese market. *Id.* ¶ 5. Tempus additionally claimed high revenue potential for Ambry Genetics ("Ambry"), a target it acquired during the Class Period. *Id.* The Company claimed Ambry's accelerated growth was on account of its strong relationships with health care providers. *Id.*

Unbeknownst to investors, Defendants had failed to disclose material adverse facts about the Company's business, operations, and prospects to make the statements made, in light of the circumstances under which they were made, not false and misleading. *Id.* ¶ 6. Specifically, Defendants failed to disclose: (1) Tempus inflated the value of contract agreements, many of which were with related parties, included non-binding opt-ins and/or were self-funded; (2) the credibility and substance of the joint venture with SoftBank was at risk because it gave the appearance of "round-tripping" capital to create revenue for Tempus; (3) Tempus-acquired Ambry had a business model based on aggressive and potentially unethical billing practices that risked scrutiny and unsustainability; (4) AstraZeneca had reduced its financial commitments to Tempus through a

3

questionable "pass-through payment" via a joint agreement between it, the Company and Pathos AI; (5) the foregoing issues revealed weakness in core operations and revenue prospects; and (6) as a result, Defendants' positive statements Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times. *Id.*

The truth was revealed on May 28, 2025, when Spruce Point Capital Management, LLC ("Spruce Point") issued a research report on Tempus that raised numerous red flags over Tempus's management, operations and financial reporting (the "Spruce Point Report"). *Id.* ¶ 7. The Spruce Point Report scrutinized Tempus on an array of issues, including: (1) Defendant Eric Lefkofsky and his associates have a history cashing out of companies before public shareholders incur losses or lackluster returns; (2) Tempus's actual AI capabilities are overstated; (3) board members and other executives have been associated with troubled companies that restated financial results; (4) signs of aggressive accounting and financial reporting; (5) issues with the AstraZeneca and Pathos AI deal that merit scrutiny; and (6) the Company's recent financial guidance revision reveals weakness in core operations. *Id.*

On this news, the price of Tempus common stock fell $12.67 per share, or 19.23%, from a closing price of $65.87 per share on May 27, 2025, to a closing price of $53.20 per share on May 28, 2025. *Id.* ¶ 8.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in market value of the Company's common stock when the truth was disclosed, He, White, and other Class members have suffered significant losses and damages. *See id.* ¶ 9.

4

**ARGUMENT**

**I.      HE AND WHITE SHOULD BE APPOINTED CO-LEAD PLAINTIFFS**

He and White should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in this Action to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of (1) the pendency of the action and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

5

As set forth below, He and White satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### A.        He and White Are Willing to Serve as Class Representatives

On June 13, 2025, counsel for plaintiff in the Action caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, announcing that a securities class action had been filed against Tempus and other defendants, and advising investors in Tempus common stock that they had until August 12, 2025—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Hood Decl., Ex. B.

He and White have filed the instant motion pursuant to the Notice, and they have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. *See id.*, Ex. C.  Accordingly, He and White satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### B.        He and White Have the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, He and White have the largest financial interest of any Tempus investor or investor group seeking to serve as lead plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3)

6

the total net funds expended during the class period; and (4) the approximate losses suffered. Nos. 97 C 2715 *et al.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997); *see also Munch v. Sprout Soc., Inc.*, No. 24-CV-3867, 2024 WL 4753734, at *4 (N.D. Ill. Nov. 12, 2024) (noting "courts generally rely upon [the] four [*Lax*] factors" to assess financial interest under the PSLRA). Of the *Lax* factors, courts in the Seventh Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Sprout*, 2024 WL 4753734, at *4 ("[M]ost courts agree that the approximate losses suffered is the most salient factor in assessing the lead plaintiff."); *Maiden v. Merge Techs., Inc.*, No. 06-C-349, 2006 WL 3404777, at *2 (E.D. Wis. Nov. 21, 2006) ("[C]ourts generally agree that the most important factor is the amount of loss suffered by the plaintiff.").

During the Class Period, He and White collectively: (1) purchased 40,879 shares of Tempus common stock; (2) expended $2,077,109 on these purchases; (3) retained 600 of their shares of Tempus common stock; and (4) as a result of the disclosures of the alleged fraud, incurred losses of approximately $55,056 in connection with their Class Period transactions in Tempus common stock. *See* Hood Decl., Ex. A. To the extent that He and White possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### C. He and White Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In determining whether lead plaintiff movants satisfy Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required. *See Chandler v. Ulta Beauty, Inc.*, No. 18-cv-1577, 2018 WL 3141763, at *5 (N.D. Ill. June 26, 2018) (noting "[t]he typicality and adequacy elements [of Rule 23] are the relevant factors to the appointment of a lead plaintiff" and finding movant "has satisfied its burden by making a preliminary showing that it satisfies the[se] requirements"); *Gumm v. Molinaroli*, No. 16-CV-1093-PP, 2016 WL 6680462, at *4 (E.D. Wis. Nov. 14, 2016) ("[I]n the context of motions for lead plaintiff inquiries, courts . . . do not engage in a 'wide-ranging analysis under Rule 23,' and generally focus on only typicality and adequacy." (quoting *Lax*, 1997 WL 461036, at *6)); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").

The typicality requirement of Rule 23(a)(3) requires that "'[a] claim . . . arises from the same event or practice or course of conduct that gives rise to the claims of other class members' and is 'based on the same legal theory.'" *Bristol County Ret. Sys. v. Allscripts Healthcare Solutions, Inc.*, No. 12 C 3297, 2012 WL 5471110, at *5 (N.D. Ill. Nov. 9, 2012) (quoting *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)). "A lead plaintiff meets the typicality requirements

8

if its claims or defenses are typical of the claims or defenses of the class." *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005) (quoting Fed. R. Civ. P. 23(a)(3)).

He and White's claims are typical of those of the Class. He and White allege, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Tempus. He and White, like other Class members, purchased Tempus common stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosures of those misrepresentations and/or omissions that drove Tempus' stock price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

"A lead plaintiff meets the adequacy requirement [of Rule 23(a)(4)] if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Ulta Beauty*, 2018 WL 3141763, at *5 (quoting *City of Sterling Heights Gen. Emples. Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at *9 (N.D. Ill. Apr. 18, 2012)).

He and White are adequate representatives for the Class. As set forth in greater detail below, in Pomerantz, He and White have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this Action, and submit their choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). In addition to Pomerantz, He and White are also represented by the Portnoy Law Firm in this Action. There is no evidence of antagonism or conflict between He and White's

interests and those of the Class. Moreover, He and White have submitted sworn Certifications declaring their commitment to protect the interests of the Class (*see* Hood Decl., Ex. C), and their significant financial interest demonstrates that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further, He and White constitute an appropriate movant duo of the type routinely appointed to serve as Co-Lead Plaintiffs. *See, e.g.*, *Allscripts*, 2012 WL 5471110, at *6 ("'[S]o long as the group is relatively small and therefore presumptively cohesive[]' . . . no pre-litigation relationship is required by statute." (quoting *Hospira*, 2012 WL 1339678, at *6)); *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-CV-01039, 2018 WL 3141814, at *4 (N.D. Ill. June 26, 2018) (appointing group of seven, finding the group "is sufficiently small and cohesive to adequately control and oversee litigation"); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group of four unrelated investors as co-lead plaintiffs); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups, and appointing group consisting of six members with the largest financial interest as co-lead plaintiffs); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff" (citation omitted)).

He and White likewise have demonstrated their adequacy because they are a cohesive duo of likeminded investors who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of lead

10

plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as co-lead plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Hood Decl., Ex. D. Courts routinely appoint more than one investor as co-lead plaintiffs pursuant to the PSLRA under such circumstances. *See, e.g.*, *Allscripts*, 2012 WL 5471110, at *6 (appointing group where they "state in their joint declaration that they conferred with one another ... [and] decided to move together in seeking appointment as lead plaintiff after due consideration and deliberation" (internal quotation marks omitted)); *LJM*, 2018 WL 3141814, at *4 (appointing group of seven where they submitted a "joint declaration . . . in support of their motion for appointment as lead plaintiff explain[ing] how and why [they] made the decision jointly to seek appointment as lead plaintiff"); *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted a declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

**D.      He and White Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses**

The presumption favoring He and White's appointment as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

11

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

He and White's ability and desire to fairly and adequately represent the Class has been discussed above.  He and White are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.  Accordingly, He and White should be appointed Co-Lead Plaintiffs for the Class.

## II.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to the approval of the Court.  *See id.* § 78u-4(a)(3)(B)(v).  "This selection should not be disturbed unless necessary to 'protect the interests of the [plaintiff] class.'" *Merge Techs.*, 2006 WL 3404777, at *4 (alteration in original) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, He and White have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith.  *See* Hood Decl., Ex. E.  In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel.  *See id.*  For more than 85

years, Pomerantz has represented defrauded investors. *See id.* As Lead Counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth-largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, He and White's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute this Action effectively and expeditiously. Thus, the Court may be assured that by approving He and White's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, He and White respectfully request that the Court issue an Order: (1) appointing He and White as Co-Lead Plaintiffs for the Class; and (2) approving their selection of Pomerantz as Lead Counsel for the Class.

Dated: August 12, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II
Jeremy A. Lieberman
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100

13

Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com

POMERANTZ LLP
Joshua B. Silverman
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811
jbsilverman@pomlaw.com

*Counsel for Co-Lead Plaintiff Movants Man He and Michael White and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
(*pro hac vice* application forthcoming)
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Co-Lead Plaintiff Movants Man He and Michael White*

14